CLARENCE W. DAUGETTE, JR., and FLORENCE T. DAUGETTE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Daugette v. Commissioner
Docket No. 10716-75.
United States Tax Court
T.C. Memo 1977-56; 1977 Tax Ct. Memo LEXIS 386; 36 T.C.M. (CCH) 252; T.C.M. (RIA) 770056; March 7, 1977, Filed J. Richard Carr, for the petitioners. Vallie C. Brooks, for the respondent. QUEALY
MEMORANDUM FINDINGS OF FACT AND OPINION QUEALY, Judge: Respondent determined a deficiency in petitioners' Federal income tax for the taxable year 1972 of $5,519.25. In the Answer to the Amended Petition, respondent has asked for an increased deficiency in the amount of $3,378.31. The issues remaining *387 for decision are as follows: (1) Whether petitioners are entitled to a deduction for a casualty loss under section 165(c) (3) [1] due to the death of their horse Rock-A-Bye Lady in 1972. (2) Whether petitioners' horse Suns Chapparel was used in a trade or busines so as to entitle petitioners to a deduction under section 165(c) (1), for the loss sustained upon the sale of such horse in 1972. FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference. At the time of the filing of the petition herein, petitioners resided in Gadsden, Alabama. Petitioners filed their 1972 joint Federal income tax return with the Director of Internal Revenue Service at Chamblee, Georgia. About 15 years ago, petitioners developed an interest in Tennessee Walking Horses after horses ridden by their children had won championships in several horse show competitions. Petitioners purchased a few Tennessee Walking Horses and entered them in horse show competitions. A few years later, after *388 various individuals expressed a desire to obtain colts from horses owned by petitioners, petitioners started a Tennessee Walking Horse breeding operation with three of their mares. In their breeding horse business, petitioners made a distinction between a horse that was being bred and a horse that was being entered in competition. A horse that was being entered in competition was considered a personal horse and a horse that was being bred was considered a business horse. The business horse was depreciated as an expense of the horse breeding business. Petitioners did not breed any of the horses they entered in competition until after the horse was retired from the show circuit. Neither Rock-A-Bye Lady nor Suns Chapparel was bred and petitioners did not claim any depreciation with respect to either horse in any year. In each of the years 1964 through 1974, petitioners reported a loss from their horse breeding business. The price petitioners received for a colt would depend upon the reputation of the mare and stud which produced the colt. The reputation of the mare and the stud is based on their performance in horse shows, the horses' conformation and the records of the colts produced *389 by such horses. A Tennessee Walking Horse establishes its show record through competition in local and state shows and the National Celebration show at which the world championship title is awarded. In the usual Tennessee Walking Horse show there is an amateur and a professional division. All of the Tennessee Walking Horses owned by petitioners during the years involved herein were shown in the amateur division and were ridden by petitioners' children or trainer. Petitioners purchased Rock-A-Bye Lady on September 18, 1967. Prior to this date she had won a world championship title at the National Celebration show. Before her death Rock-A-Bye Lady had won a total of nine world championship titles and numerous blue ribbons at local and state shows. Her performance record in horse show competition had established her as the best living Tennessee Walking Horse mare. Petitioners had planned on entering her in competition for the last time at the 1972 National Celebration and then were going to retire her from the show circuit for breeding purposes. Rock-A-Bye Lady died on August 8, 1972, of an intestinal malfunction known in the trade as colic. She was between eight and nine *390 years old at death. Petitioners received recovery of $10,000 under an insurance policy carried on the horse. On March 26, 1970, petitioners purchased Suns Chapparel for $18,000 for their daughter to ride in the amateur class at the horse shows. Petitioners purchased Suns Chapparel thinking they could develop him into another championship horse. However, after petitioners' daughter and the trainers had ridden the horse in several shows, petitioners decided to sell Suns Chapparel, which they did on April 15, 1972, for $12,500. On their 1972 income tax return, petitioners claimed a loss from the sale of Suns Chapparel and the death of Rock-A-Bye Lady, claiming both horses were used in their trade or business. In the statutory notice of deficiency, the respondent determined that the deductions claimed as losses from the sale of Suns Chapparel and the death of Rock-A-Bye Lady should be decreased for depreciation allowable. In their original petition, petitioners alleged that both horses were used in their horse breeding business and did not depreciate them because they claimed the horses' market values did not decrease. Petitioners' amended petition alleged that Rock-A-Bye *391 Lady was not used in the trade or business, but was a personal horse. Respondent's Answer to the Amendment to the Petition alleged that both horses were personal horses and the death of Rock-A-Bye Lady was not due to a casualty. Respondent asked the Court to redetermine the deficiency or in the alternative, approve, in all respects, the deficiency as set forth in the notice of deficiency. OPINION Petitioners owned several Tennessee Walking Horses and in 1961 started a small breeding business. In each of the years 1964 through 1974, petitioners reported a loss from breeding horses. The price petitioners received for a colt would depend upon the reputation of the mare and stud that produced the colt. The reputation of the horse was based, among other things, on its performance in horse shows. In 1967 petitioners purchased Rock-A-Bye Lady. Rock-A-Bye Lady was entered in the amateur division of many horse shows and won numerous championships and ribbons, thereby establishing herself as the best living Tennessee Walking Horse mare. Just prior to her death petitioners planned to retire Rock-A-Bye Lady from the show circuit for breeding purposes. Rock-A-Bye Lady became ill on *392 August 8, 1972, with an intestinal malfunction known as colic and died the next day. Petitioners received $10,000 from an insurance policy. On March 26, 1970, petitioners purchased Suns Chapparel at a price of $18,000 for their daughter to ride in the amateur class. Petitioners purchased Suns Chapparel thinking they could develop him into a championship horse, but after their daughter and their trainer had ridden the horse in several shows, petitioners realized they had made a mistake and decided to sell Suns Chapparel which they did on April 15, 1972, for $12,500. Petitioners contend that they are entitled to a casualty loss deduction on their 1972 income tax return under section 165 (c) (3) due to the death of Rock-A-Bye Lady. Respondent admits that Rock-A-Bye Lady was a personal horse, but contends that petitioners are not entitled to a casualty loss deduction with respect to their loss upon the death of the horse. Petitioners further contend that Suns Chapparel was a business horse and they are entitled to a deduction for the loss sustained upon the sale of Suns Chapparel. Respondent argues that both horses should be treated consistently, either as personal horses or *393 as business horses, and in his view, the record supports the finding that both were personal horses. Section 165 (c) (3) authorizes a deduction for an uncompensated loss of property not used in trade or business if such loss arises from a fire, storm, shipwreck, or other casualty or from theft. In order for the death of Rock-A-Bye Lady to qualify as a casualty loss under this section, her death must fit within the term "other casualty." In numerous cases the courts have stated the term "other casualty" must be restricted to mean events of the same kind or the same characteristics as those specifically enumerated in the statute. The casualties enumerated are unusual, and unexpected events which are caused by a sudden or destructive force. See , cert. denied . The facts in this case indicate that Rock-A-Bye Lady's death did not have the necessary characteristics to qualify it as a casualty within the meaning of section 165 (c) (3). The veterinarian who attended Rock-A-Bye Lady during her colic attack stated that the horse's death was due to her own inherent physical weakness. A *394 professional trainer of Tennessee Walking Horses testified that over the past five years, eight or nine of the horses he had been training had died of colic, and that colic is a common cause of death in horses. This evidence clearly indicates that the horse's death was not due to a sudden or destructive force and the cause of death was not an unexpected or unusual occurrence in horses. Accordingly, the Court finds that the death of Rock-A-Bye Lady was not a casualty within the meaning of section 165 (c) (3) and therefore her death does not entitle petitioners to a casualty loss deduction. The record indicates that Suns Chapparel was purchased by petitioners for their daughter to ride in horse shows and that after entering the horse in a few shows, they decided to sell him. The Court cannot distinguish between the petitioners' use of Rock-A-Bye Lady and their use of Suns Chapparel. Both horses were ridden by petitioners' children in the amateur division of horse shows; neither horse was bred and neither horse was depreciated on petitioners' business return. These facts, coupled with the fact that petitioners' themselves did not consider a horse a business horse until it was *395 retired from the show circuit to the breeding business, lead inescapably to the conclusion that Suns Chapparel, like Rock-A-Bye Lady, was a personal horse of petitioners. Petitioners therefore are not entitled to a deduction of their loss on the sale of Suns Chapparel in 1972. Decision will be entered under Rule 155. Footnotes
1. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954.↩